IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SAMUEL ADLERSTEIN, Individually and as Next Friend of Daniel Adlerstein and Rebecca Adlerstein, | § | |
| Plaintiffs, | § | |
| VS. | § | Civil Action No. 3:25-CV-2228-D |
| COOPER AEROBICS ENTERPRISES, INC., DBA COOPER HOTEL & CONFERENCE CENTER, | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

The court returns to this action in which plaintiff Samuel Adlerstein ("Adlerstein"), individually and as next friend of his minor children, Daniel ("Daniel") and Rebecca ("Rebecca") Adlerstein,[1] brings various federal- and state-law claims against defendant Cooper Aerobics Enterprises, Inc., d/b/a Cooper Hotel & Convention Center ("Cooper"). Cooper moves to dismiss all of Adlerstein's claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons explained, the court grants the motion in part and denies it in part and grants Adlerstein leave to replead.

[1]Although the children are alleged to be minors and their initials would typically be used in place of their names, *see* Fed. R. Civ. P. 5.2(a)(3), the use of their names in public pleadings constitutes a waiver of protection under Rule 5.2(h)

# I

## A

Adlerstein sues Cooper based on claims arising from his family's April 2025 stay at the Cooper Hotel & Convention Center ("Cooper Hotel").[2] Adlerstein's daughter, who has severe anxiety, was accompanied by "Pepper," a dog that Adlerstein alleges is a registered service animal. About three days into Adlerstein's stay, a Cooper Hotel staff member, Jonathan Sanders ("Sanders"), alongside police officers, confronted Adlerstein and accused him of breaking the hotel's pet policy by possessing the dog on the hotel's premises. Despite Adlerstein's assertion that he had stayed with the same dog at the Cooper Hotel, Sanders and his manager, David Little ("Little"), demanded that Adlerstein furnish proof that the dog was a registered service animal. Adlerstein, an observant Jew, responded that, although he had this proof on his cell phone, he could not access his cell phone that day because he was observing the Sabbath. Sanders and Little continued to insist that Adlerstein provide such proof, and, when Adlerstein refused, they forced Rebecca and Pepper to leave the premises.

## B

In *Adlerstein I* the court dismissed Adlerstein's first amended complaint *sua sponte*

[2]The court construes the third amended complaint in the light most favorable to Adlerstein as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Adlerstein's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

for lack of subject matter jurisdiction and granted him leave to replead. Adlerstein then filed a second amended complaint, which alleged claims under Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. § 2000a *et seq.*; the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 *et seq.*; Chapter 121 of the Texas Human Resources Code ("THRC"); the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2011); and for intentional infliction of emotional distress ("IIED") and negligence. In *Adlerstein II* the court dismissed the Title II, IIED, and negligence claims and granted Adlerstein leave to replead. *Adlerstein v. Cooper Aerobics Enters., Inc. (Adlerstein II)*, 2026 WL 2111729, at *1 (N.D. Tex. July 22, 2026) (Fitzwater, J.).

Adlerstein then filed a third amended complaint ("TAC"), which re-asserts all but the IIED claim and alleges the following new facts: neither Adlerstein nor his children were recognizably Jewish until dressed in religious garb on the morning that Cooper enforced its pet policy; a Jewish man named Dr. Wohlgelernter once "received hostile treatment" from "Mr. Sanders" because of his "practice of observing the Sabbath"; and, finally, Adlerstein more clearly alleges that he was allowed to bring the dog on prior stays, when his Jewish faith was not apparent.

Cooper now moves to dismiss all of Adlerstein's claims. Adlerstein opposes the motion, which the court is deciding on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the] plaintiff['s] [second] amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (final alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court first considers whether Adlerstein has plausibly pleaded a Title II claim.

A

Title II provides, in pertinent part, that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of . . . religion[.]" 42 U.S.C. § 2000a(a). Absent direct evidence of discrimination, to prevail on a Title II claim, a plaintiff must demonstrate a prima facie case consisting of these elements: that "(1) [he] is a member of a protected class; (2) [he] attempted to contract for the services of a public accommodation; (3) [he] was denied those services; and (4) the services were made available to similarly situated persons outside [his] protected class." *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 700 (5th Cir. 2024) (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008)).

But "to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim[,]" a "plaintiff need not make out" a prima facie case under *McDonnell Douglas*. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (internal quotation marks and citation omitted). Instead, a plaintiff need only plausibly plead the ultimate elements of his claim. *See, e.g.*, *Anderton v. Dall. Indep. Sch. Dist.*, 2024 WL 3687101, at *3 n.5 (N.D. Tex. Aug. 6, 2024) (Fitzwater, J.), *aff'd*, 2026 WL 2742348 (5th Cir. Sept. 16, 2026); *Cicalese*, 924 F.3d at 766-67. Under similar anti-discrimination statutes, "there are two ultimate elements a plaintiff must plead . . . (1) an 'adverse . . . action' (2) taken against a plaintiff

'*because of* [his] protected status.'" *Cicalese*, 924 F.3d at 766 (emphasis in original) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). Because the elements required to establish a prima facie case under Title II are similar to those required for a Title VII claim, the court will apply Title VII precedents when deciding whether Adlerstein has plausibly pleaded a Title II claim. *See Fahim*, 551 F.3d at 350 (noting that the elements of a Title II prima facie case were repurposed from Title VII doctrine).

B

Adlerstein has plausibly pleaded a Title II claim, although based on circumstantial rather than direct evidence.

"'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (age discrimination case) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)). "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in [the adverse action], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98. Direct evidence of discrimination generally consists of statements or writings that explicitly address the protected class. *See Liedtke v. City of Austin*, 185 F.4th 560, 578 (5th Cir. 2026) ("offensive slurs can constitute direct evidence of . . . discrimination"); *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005) ("We have previously held that statements or documents which show on its face that an improper criterion served as a basis . . . for . . . action . . . are direct evidence of discrimination." (internal quotation marks omitted)).

Adlerstein has made no such allegations here.

Adlerstein maintains that Sanders "engaged in directly anti-Jewish hostile treatment *of another guest* [by] belittling his observance of the Jewish Sabbath and rejecting his Sabbath-related request." P. Resp. (ECF No. 39) at 3 (emphasis added). The TAC alleges that another Jewish guest was treated in a "disparaging and disrespectful manner," and infers anti-Jewish hostility. TAC (ECF No. 34) ¶ 64. But allegations related to conduct directed to another guest require the court to infer that Sanders acted with a discriminatory animus toward Adlerstein. And allegations that the other guest was treated in a "disparaging and disrespectful manner" require that the court draw the inference that Sanders' disparaging and disrespectful conduct was based on that guest's Jewish faith. Adlerstein does not specifically reference any direct evidence of discrimination. The court therefore holds that he is relying on circumstantial rather than direct evidence.

C

Because Adlerstein relies on circumstantial evidence, the court now considers whether Adlerstein has pleaded "sufficient facts on all of the *ultimate elements* of his claim," i.e., whether Cooper engaged in the conduct in question "*because* of [Adlerstein's] protected status." *Cicalese*, 924 F.3d at 767 (emphasis in original) (internal quotation marks omitted).

1

As in *Adlerstein II*, Adlerstein has not plausibly pleaded that Cooper made its services available to similarly-situated individuals outside his protected class. *See Butler v. Our Cmty. Our Kids*, 2025 WL 3650759, at *3 (N.D. Tex. Dec. 17, 2025) (Fitzwater, J.).

Adlerstein maintains that he "*and his daughter themselves* were similarly situated but treated differently, both during multiple prior stays at Cooper Hotel . . . and during the first two days of the 2025 stay at issue[.]" P. Resp. (ECF No. 39) at 4 (emphasis in original). The TAC alleges that the pet policy was not enforced until "Sanders recognized Plaintiffs as Jewish," thereby showing different treatment for similarly-situated patrons who were perceived to be non-Jewish. TAC (ECF No. 34) ¶ 108. In essence, Adlerstein wants to be his own comparator. Citing *Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571 (5th Cir. 2020), he maintains that "[t]his is sufficient under Fifth Circuit case law recognizing that evidence of how the *same individual* was treated . . . can support a discrimination claim." P. Resp. (ECF No. 39) at 4 (emphasis in original).

But the court has not found that holding in *Brown* or in any other Fifth Circuit case. In fact, it appears that only a handful of district courts have examined whether to consider a plaintiff as his own comparator. *See Black v. Miss. Dep't of Rehab. Servs.*, 2024 WL 6881542, at *8 (S.D. Miss. Dec. 27, 2024) (considering as a hypothetical); *Martinez-Santiago v. Zurich N. Am. Ins. Co.*, 2010 WL 184450, at *11 (S.D.N.Y. Jan. 20, 2010); *Kingsley v. Tellworks Commc'ns, LLC*, 2017 WL 2624555, at *25 (N.D. Ga. May 24, 2017) (report and recommendation later adopted).[3] And given the Fifth Circuit's conclusion

[3]In *Taylor v. Collin County Community College District*, 2025 WL 5280696, at *9 (E.D. Tex. Dec. 2, 2025), the court stated in a summary judgment ruling that bare allegations that "[defendant] learned of [the plaintiff's protected class] and then discriminated against him" would be insufficient to establish "any specific person or persons who were similarly situated."

that a plaintiff must demonstrate that he was "treated less favorably . . . than . . . *other* [persons] . . . who were *not* members of the protected class," *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (emphasis added), the court declines to accept Adlerstein's contention that he and his daughter can be their own comparators.[4]

Yet Adlerstein need not make this showing at the Rule 12(b)(6) stage because the prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Therefore, his failure to identify a similarly-situated comparator does not necessarily defeat his Title II claim. *See Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) (examining whether other facts existed in spite of a lack of "comparator allegations").

2

"[C]omparator allegations aside," the TAC does allege facts that are sufficient to "nudge" Adlerstein's Title II claim "across the line from conceivable to plausible." *Id.* at 600 (quoting *Twombly*, 550 U.S. at 547). Adlerstein satisfies this burden by alleging facts in general that "would suggest" that Cooper's actions were "based" on Adlerstein's Jewish faith. *See Raj*, 714 F.3d at 331. Adlerstein asserts that Cooper enforced its pet policy only after Adlerstein made his Jewish faith obvious. Before that, Adlerstein had stayed at the

[4]As the court held in *Adlerstein II*, the allegations regarding the security guard's comments and Adlerstein's belief as to his knowledge are conclusory and insufficient to show a comparator. *Adlerstein II*, 2026 WL 2111729, at *3.

Cooper property[5] several times without incident. At this stage, the allegations regarding the difference in treatment that Adlerstein received on numerous prior occasions are sufficient to plausibly plead that Cooper's discriminatory conduct was *because of* his Jewish faith. *See Cicalese*, 924 F.3d at 766-67.

Accordingly, the court denies Cooper's motion to dismiss Adlerstein's Title II claim.

IV

The court now turns to Adlerstein's ADA and THRC claims.

A

> Title III of the ADA, which applies to public accommodations, establishes the general rule that [n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

*Johnson v. Gambrinus/Spoetzel Brewery*, 116 F.3d 1052, 1058 (5th Cir. 1997) (alteration in original; internal quotation marks omitted) (quoting 42 U.S.C. § 12182(a)).

The ADA "defines discrimination to include 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods [and] services . . . to individuals with disabilities[.]'" *Id.* at 1058

---

[5]The TAC does not allege that Adlerstein identified himself as Jewish on any of his prior stays, although he alleges that he stayed at the Cooper property to attend Jewish ceremonial services in Dallas. In fact, Adlerstein asserts the opposite. Taking the factual allegations as true, Cooper applied its pet policy soon after the first revelation of Adlerstein's Jewish faith.

(quoting § 12182(b)(2)(A)(iii)). "Congress has specifically directed the Justice Department to issue regulations implementing Title III." *Id.* at 1060; *see* § 12186(b). One such regulation concerns service animals:

> A service animal shall be under the control of its handler. A service animal shall have a harness, leash, or other tether, unless either the handler is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, leash, or other tether would interfere with the service animal's safe, effective performance of work or tasks, in which case the service animal must be otherwise under the handler's control (e.g., voice control, signals, or other effective means).

28 C.F.R. § 36.302(c)(4); *see also* § 35.136(d) (applying this regulation to state and local governments).[6]

Courts dismiss ADA claims when the requirements of § 36.302(c)(4) are not met. *See*

---

[6]Following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), it is an open question whether these "service animal regulations, i.e., the DOJ's interpretation of the ADA[,]" still "have the force and effect of law." *Zangara v. Nat'l Bd. of Med. Examiners*, 2025 WL 1218188, at *4 n.9 (3d Cir. Apr. 28, 2025) (per curiam) (unpublished) (internal quotation marks omitted); *Taylor v. K N B's Inflatables Please, L.L.C.*, 2025 WL 608631, at *5 (M.D. Pa. Feb. 25, 2025). So far as the court is aware, the Fifth Circuit has not precluded district courts from applying them. And courts within the Fifth Circuit have continued to examine the regulations post-*Loper Bright*. *See Garces v. Brain & Spine Inst. of San Antonio*, 2025 WL 1934534, at *1 (W.D. Tex. June 20, 2025) (report and recommendation later adopted); *Drewa v. San Antonio Zoological Soc'y, Inc.*, 2025 WL 2955750, at *3 (W.D. Tex. June 13, 2025) (report and recommendation later adopted).

Moreover, "Congress delegated to the [Department of Justice] the power to craft an important body of regulations interpreting [the ADA]. This delegation is express authority to form an interpretive framework around the statutory text—so long as those regulations are not contrary to the statutory text." *Utah v. Micone*, 766 F.Supp.3d 669, 683 (N.D. Tex. 2025) (Hendrix, J.) (internal citations and quotation marks omitted). There is no indication that the regulations here—created with express congressional authority—are "contrary to the statutory framework." *See* 42 U.S.C. § 12186(b); *Micone*, 766 F.Supp.3d at 663.

*Smith v. Spindletop MHMR Servs.*, 2020 WL 3442203, at *3 (E.D. Tex. Mar. 24, 2020) (report and recommendation later adopted); *Thomas v. Univ. of S. Fla.*, 2019 WL 2452825, at *3 (M.D. Fla. June 12, 2019).[7] Neither complaint in *Smith* nor *Thomas* "contain[ed] an allegation that [the] Plaintiff was in compliance" with the regulation by "having his service animal on a harness, leash, or other tether." *Thomas*, 2019 WL 2452825, at *4. Instead, the *Thomas* plaintiff alleged that the service animal had a "wireless leash[,]" and the *Smith* plaintiff alleged that he was removed from the premises for *failure* to leash his dog. *Id.* at *4 (internal quotation marks omitted); *Smith*, 2020 WL 3442203, at *1. Neither allegation was sufficient. Therefore, both courts dismissed the ADA claims for failure to "state a valid ADA claim upon which relief can be granted." *Smith*, 2020 WL 344203, at *3; *cf. Bartell v. Grifols Shared Servs. NA, Inc.*, 618 F.Supp.3d 275, 286 (M.D.N.C. 2022) (holding that the presence of a leash was sufficient alone to show that a service animal was under control).

B

Cooper maintains that Adlerstein's ADA claim should be dismissed under § 36.302(c)(4). The court agrees.

Adlerstein alleges that Pepper (the family's dog) "was sitting atop Rebecca's luggage" when the family arrived, stayed in the room until the incident, and then, during the policy's enforcement, "Daniel . . . [was] holding [the] 3-pound dog that looks like a teddy bear."

---

[7]These cases rely on the equivalent regulation for State and Local Government Services. This difference is insignificant in light of the identical language. *Compare* § 36.302 *with* § 35.136.

TAC (ECF No. 34) ¶¶ 31, 39, 68.[8] Nowhere in the TAC does Adlerstein allege that Pepper was harnessed, leashed, or otherwise tethered. Therefore, on its face, the TAC does not plausibly plead that Pepper satisfied the service animal requirements of § 36.302(c)(4).

Adlerstein relies in his brief on two opposition arguments: first, that § 36.302(c)(4) "contemplates various forms of control" other than a harness; and, second, that the law does not require "a service animal [to] be physically tethered to its handler at all times[.]" P. Resp. (ECF No. 39) at 5. The court is not persuaded by either argument.

The court "interpret[s] regulations in the same manner as statutes, looking first to the regulation's plain language." *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 573 (5th Cir. 2017) (quoting *Anthony v. United States*, 520 F.3d 374, 380 (5th Cir. 2008)). "Where the language of the regulation is unambiguous, [the court does not] look beyond the plain wording of the regulation to determine its meaning." *Id.* Here, the plain language of § 36.302(c)(4) is clear: the various forms of control beyond a tether are only operative if the service dog meets one of the two exceptions.[9] Otherwise, "control" is clearly confined to a "harness, leash, or other tether." *Id.* The TAC does not allege that a tether "would interfere with the service animal's . . . performance" or that "the handler is unable

[8]Adlerstein later alleges that he was "instructed" to go upstairs . . . get Pepper, and remove her from the hotel property[.]" TAC (ECF No. 34) ¶ 86. It is, at best, unclear where Pepper was located during the altercation. Regardless, there is no allegation of a "harness, leash, or other tether" at the relevant times. *See* § 36.302.

[9]There is no exception "unless either the handler is unable because of a disability to use a harness, leash, or other tether, or the use of a harness, leash, or other tether would interfere with the service animal's safe, effective performance of work or tasks." § 36.302.

[to do so] because of disability." *Id.* Therefore, to comply with § 36.302(c)(4), Pepper must have been subject to a "leash, harness, or other tether." *Id.*

To reach this conclusion, the court need not go so far as holding that § 36.302(c)(4) requires "that a service animal be physically tethered to its handler at all times." P. Resp. (ECF No. 39) at 5. The TAC does not allege that Pepper was leashed at the time the policy was enforced. And, under the regulation, a "public accommodation may ask an individual with a disability to remove a service animal from the premises if . . . the animal is out of control[,]" and in this instance "control" plainly means a "harness, leash, or other tether."[10] § 36.302(c)(2)(i); § 36.302(c)(4). Therefore, Pepper was not a protected service animal under the ADA.

Accordingly, the court grants Cooper's motion to dismiss Adlerstein's ADA claim.

C

The foregoing discussion concerning Adlerstein's ADA claim does not apply to his claim under the THRC. Unlike other state statutes with federal analogues, "Chapter 121 of the THRC" was "enacted before and differs substantially from its federal counterpart in the ADA[.]" *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 57-58 (Tex. 2019); *cf. Dillard v. SNC-Lavalin Eng'rs & Constructors Inc.*, 629 S.W.3d 692, 698 (Tex. App. 2021, no pet.).

---

[10]Cooper's motion to dismiss suggests that it would be inappropriate for Adlerstein or Daniel—rather than Rebecca—to control Pepper. The regulation does not impose that requirement. Instead, a "handler" is a separate person from an "individual with a disability." § 36.302. Therefore, on repleading, it may be sufficient for Pepper to have been under Daniel's or Adlerstein's control.

Because this is the only ground for dismissal on which Cooper relies, the court denies its motion as to Adlerstein's THRC claim.

V

The court turns next to Adlerstein's DTPA claim.

A

The DTPA provides consumers a cause of action for false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code Ann. §§ 17.41-50; *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

> The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing case of the plaintiff's injury.

*Windle v. Synthes USA Prods., L.L.C.*, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012) (Fitzwater, C.J.) (citing *Amstadt*, 919 S.W.2d at 649).

Adlerstein alleges one basis for his DTPA claim: that "Cooper engaged in unconscionable misconduct through the course of events described above[.]" TAC (ECF No. 34) ¶ 150.

B

The DTPA defines an unconscionable action as one that, to the consumer's detriment, "takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." § 17.45(5). To prove an unconscionable action or course of

action, a plaintiff must show that (1) the "defendant took advantage of his lack of knowledge" and (2) "the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001) (internal quotation marks omitted) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998)). In making this determination, the court examines "the entire transaction" and does not "inquir[e] whether" Cooper's agents "intended to take advantage of" Adlerstein "or acted with knowledge or conscious indifference." *Daugherty v. Jacobs*, 187 S.W.3d 607, 616 (Tex. App. 2006, no pet.) (citing *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985)). But "[t]here must be a showing of what" Adlerstein "would have done if he had known about the information" and a showing of his "knowledge, ability, experience, or capacity." *Id.* Ultimately, "proving unconscionability in a TDTPA case is difficult." *Strauss v. Ford Motor Co.*, 439 F.Supp.2d 680, 688 (N.D. Tex. 2006) (Fish, C.J.).

At the motion to dismiss stage, however, Adlerstein need only allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

C

Adlerstein has plausibly pleaded a DTPA claim. Cooper maintains that the TAC fails for two reasons: first, because the TAC does not allege the facts required to plausibly plead that Cooper "took advantage of [Adlerstein's] lack of knowledge[,]" "resulting in unfairness that was glaringly noticeable, flagrant, complete, or unmitigated"; and, second, because the TAC fails to allege what Adlerstein "could have or would have done had he known about Cooper Hotel's no-pet policy." D. Br. (ECF No. 35) at 9-10.

1

Taking the allegations of the TAC as true, Adlerstein has plausibly pleaded that Cooper "took advantage of his lack of knowledge[,]" which resulted in noticeable and flagrant unfairness. *Bradford*, 48 S.W.3d at 760. In reaching this conclusion, the court examines the "entire transaction" between Cooper and Adlerstein and does not focus on what Sanders or Little knew when the pet policy was enforced. *See Daugherty*, 187 S.W.3d at 616.

The TAC alleges that Adlerstein and Pepper stayed at the Cooper Hotel on three occasions when Cooper did not enforce the pet policy. TAC (ECF No. 34) ¶ 151. And during the stay in question, hotel staff had seen and discussed Pepper on two occasions without mentioning the pet policy. Furthermore, contrary to Cooper's position, nowhere in the TAC is there an allegation or a basis to reasonably infer that Adlerstein was actually aware, or should have been aware, of the pet policy. Indeed, Adlerstein alleges the opposite. TAC (ECF No. 34) ¶ 151. From these allegations, it is reasonable to infer that Adlerstein lacked knowledge of Cooper's pet policy. And it is reasonable to infer that Cooper "took advantage of" his lack of knowledge by enforcing the policy on the Sabbath, when he was unable to present the requested documentation without violating his religious beliefs. *Id.* ¶ 81.

Furthermore, Adlerstein has alleged sufficient facts to plausibly plead that the resulting unfairness was "glaringly noticeable, flagrant, complete, and unmitigated." *Daugherty*, 187 S.W.3d at 616. Taking the TAC's allegations as true, Cooper required

Adlerstein to comply with a previously unknown policy in such a way as to violate his sincerely held religious beliefs, otherwise facing removal from the premises. Adlerstein also alleges that his inability to comply with Cooper's requirements resulted in a belief of "imminent risk of arrest" due to the presence of Dallas police, a "harassing[] and embarrassing[]" interrogation of his son, and (eventually) the removal of his minor daughter. TAC (ECF No. 34) ¶¶ 84, 111, 152. At the motion to dismiss stage, the court need only be able to draw the reasonable inference from the TAC that the results of Adlerstein's inability to comply with an unknown policy were an unfairness that was "glaringly, noticeable, flagrant, complete, and unmitigated." *Bradford*, 48 S.W.3d at 760.

2

As for whether Adlerstein failed to allege what he "could have or would have done had he known about Cooper Hotel's no-pet policy[,]" the court draws the reasonable inference from the TAC that Adlerstein would have presented the service-animal documentation to Cooper. D. Br. (ECF No. 35) at 10.

Adlerstein alleges that "Pepper was . . . trained for 1.5 years specifically to become a service dog[,]" is "a qualified service dog . . . pursuant to official . . . paperwork," and that Adlerstein "repeatedly explained that he had documents on his phone proving Pepper is a registered service dog[,]" which "he would be happy to provide . . . after the Sabbath." TAC (ECF No. 34) ¶¶ 15-16, 81-82. Taking these allegations as true, it is reasonable to infer that, on any day other than the Sabbath, Adlerstein would have presented the documentation had he known of Cooper's pet policy.

D

Accordingly, the court denies Cooper's motion to dismiss Adlerstein's DTPA claim.

VI

Finally, the court turns to Adlerstein's negligence claim, which is grounded in allegations that Cooper was negligent in hiring, training, and supervising Sanders and Little.

A

Negligent hiring, training, and supervision claims are "simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *Phillips v. Super Servs. Holdings, L.L.C.*, 189 F.Supp.3d 640, 648 (S.D. Tex. 2016) (citing *Guidry v. Nat'l Freight, Inc.*, 944 S.W.2d 807, 810 (Tex. App. 1997, no writ)). Although the Supreme Court of Texas has not ruled definitively on the existence, elements, and scope of such torts, *see Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n.27 (Tex. 2010), the elements of these claims are generally a duty, a breach of that duty, and damages proximately caused by the breach. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 790, 796-97 (Tex. 2006); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477-78 (Tex. 1995).

"Liability for negligent hiring,[training], or supervision is also premised on proximate cause." *Phillips*, 189 F.Supp.3d at 648. "Proximate cause consists of cause in fact and foreseeability." *Id.* (citing *Boys Club*, 907 S.W.2d at 477). "Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission." *Id.* (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985)). In essence, an employer is only liable if it "knew or should have known" that the

employee was "incompetent or unfit" so as to create the particular danger that the plaintiff experienced. *See Hernandez v. Ventura Sys. L.L.C.*, 2024 WL 583500, at *4 (N.D. Tex. Feb. 13, 2024) (Fitzwater, J.).

B

Adlerstein has not alleged sufficient facts to plausibly plead that Cooper "knew or should have known" that Sanders or Little had a penchant for "committ[ing]" the alleged "actionable common-law torts." TAC (ECF No. 34) ¶ 143; *Hernandez*, 2024 WL 583500, at *5. Instead, Adlerstein only alleges that Dr. Wohlgelernter, a previous guest, felt that he once received "hostile treatment" compared to non-Jewish guests. TAC (ECF No. 34) ¶ 61. But this does not create an expectation that Sanders or Little was likely to commit "defamation," "intrusion upon seclusion," or "false imprisonment" torts in the future. TAC (ECF No. 34) ¶¶ 62, 143. And, even if it did, Adlerstein has not plausibly pleaded that Cooper knew or should have known of the one-time incident involving Dr. Wohlgelernter. *See id.* ¶ 61 (merely alleging that Cooper "has video cameras and observes or should observe its employees[.]"). Therefore, Adlerstein has not plausibly pleaded a claim for negligent hiring, training, or supervision.

C

Accordingly, the court dismisses Adlerstein's negligence claim.

VII

Although the court is dismissing some of Adlerstein's claims, it will grant him leave to replead. *See, e.g.*, *In re Am. Airlines, Inc., Priv. Litig.*, 370 F.Supp.2d 552, 567-68 (N.D.

Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal). There is no indication that Adlerstein cannot, or is unwilling to, cure the defects that the court has identified.

Furthermore, allowing Adlerstein to file a fourth amended complaint is not excessive under the circumstances of this case. Adlerstein filed his first amended complaint before the court addressed the adequacy of his original complaint. Then, the court in *Adlerstein I* dismissed the first amended complaint on grounds that it raised *sua sponte*. And today's decision is based on deficiencies not addressed in *Adlerstein II.* Accordingly, the court will grant Adlerstein 28 days from the date this memorandum opinion and order is filed to file a fourth amended complaint.

* * *

For the reasons explained, the court dismisses Adlerstein's ADA and negligence claims, declines to dismiss Adlerstein's Title II, THRC, and DTPA claims, and grants Adlerstein leave to amend.

**SO ORDERED**.

October 19, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE